JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| J.A., by and through his parents and natural guardians, Donald Abramo and Ellen Abramo | Nazareth Area School District |

| (b) County of Residence of First Listed Plaintiff    Northampton | County of Residence of First Listed Defendant    Northampton |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

J. Matthew Sharp
Alliance Defending Freedom
1000 Hurricane Shoals Rd., N.E. Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774

L. Theodore Hoppe, Jr.
2 S. Orange Street, Suite 215
Santander Bank Building
Media, PA 19063
(610) 497-3579

Attorneys *(If Known)*

Gary A. Brienza
Peters, Moritz, Peischl, Zulick, Landes & Brienza
1 S. Main St., Nazareth, PA 18064

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government <br>      Plaintiff | ☒ 3   Federal Question <br>      *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government <br>      Defendant | ☐ 4   Diversity <br>      *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br>     & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br>     Student Loans <br>     (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment <br>     of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br>     Liability <br> ☐ 320 Assault, Libel & <br>     Slander <br> ☐ 330 Federal Employers' <br>     Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br>     Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br>     Product Liability <br> ☐ 360 Other Personal <br>     Injury <br> ☐ 362 Personal Injury - <br>     Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br>     Product Liability <br> ☐ 367 Health Care/ <br>     Pharmaceutical <br>     Personal Injury <br>     Product Liability <br> ☐ 368 Asbestos Personal <br>     Injury Product <br>     Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br>     Property Damage <br> ☐ 385 Property Damage <br>     Product Liability | ☐ 625 Drug Related Seizure <br>     of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br>     28 USC 157 <br> <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark <br> <br> **LABOR** <br> ☐ 710 Fair Labor Standards <br>     Act <br> ☐ 720 Labor/Management <br>     Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br>     Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br>     Income Security Act | ☐ 375 False Claims Act <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br>     Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ <br>     Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br>     Act <br> ☐ 896 Arbitration |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☒ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br>     Accommodations <br> ☐ 445 Amer. w/Disabilities - <br>     Employment <br> ☐ 446 Amer. w/Disabilities - <br>     Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate <br>     Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br>     Conditions of <br>     Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration <br>     Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br>     or Defendant) <br> ☐ 871 IRS—Third Party <br>     26 USC 7609 | ☐ 899 Administrative Procedure <br>     Act/Review or Appeal of <br>     Agency Decision <br> ☐ 950 Constitutionality of <br>     State Statutes |

*(SOCIAL SECURITY column:)* ☐ 861 HIA (1395ff)   ☐ 862 Black Lung (923)   ☐ 863 DIWC/DIWW (405(g))   ☐ 864 SSID Title XVI   ☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original <br> Proceeding    ☐ 2 Removed from <br> State Court    ☐ 3 Remanded from <br> Appellate Court    ☐ 4 Reinstated or <br> Reopened    ☐ 5 Transferred from <br> Another District <br> *(specify)*    ☐ 6 Multidistrict <br> Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Violation of student's rights under the First and Fourteenth Amendments

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** <br> UNDER RULE 23, F.R.Cv.P.    **DEMAND $**    CHECK YES only if demanded in complaint: <br> **JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   4/4/14    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2140 Eagles Landing Dr., Nazareth, PA 18064

Address of Defendant: One Education Plaza, Nazareth, PA 18064-2397

Place of Accident, Incident or Transaction: Shafer Elementary School, 49 South Liberty St., Nazareth, PA 18064

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, L. Theodore Hoppe, Jr. _____, counsel of record do hereby certify:

  ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

  ☒ Relief other than monetary damages is sought.

DATE: _____      _____      62082

                         Attorney-at-Law                Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/4/14      _____      62082

                         Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2140 Eagles Landing Dr., Nazareth, PA 18064

Address of Defendant: One Education Plaza, Nazareth, PA 18064-2397

Place of Accident, Incident or Transaction: Shafer Elementary School, 49 South Liberty St., Nazareth, PA 18064
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, L. Theodore Hoppe, Jr. , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _____ _____ 62082
Attorney-at-Law  Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/4/14 _____ 62082
Attorney-at-Law  Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

J.A., by and through his parents  
and natural guardians, Donald            :        CIVIL ACTION
Abramo and Ellen Abramo                  :
            v.                    :
Nazareth Area School District            :
                              :        NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health  
    and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from  
    exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are  
    commonly referred to as complex and that need special or intense management by  
    the court. (See reverse side of this form for a detailed explanation of special  
    management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (x)

| | | |
|---|---|---|
| 4/4/14 | L. Theodore Hoppe, Jr. | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (601) 497-3579 | (610) 365-1333 | thoppe@thoppelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J.A., by and through his parents and natural
guardians, DONALD ABRAMO and
ELLEN ABRAMO,

     *Plaintiff,*

v.

NAZARETH AREA SCHOOL DISTRICT,

     *Defendant.*

Case No. _____

## VERIFIED COMPLAINT
## (INJUNCTIVE AND DECLARATORY RELIEF SOUGHT)

Now comes Plaintiff J.A.[1], a minor, by and through his parents and natural guardians, Donald and Ellen Abramo, pursuant to the Federal Rules of Civil Procedure, and for the causes of action against Defendant avers the following:

**I.   INTRODUCTION**

1.   This is a civil rights action under 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, and the Pennsylvania Religious Freedom Protection Act brought to remedy a violation of the constitutional rights of J.A., a student at Floyd R. Shafer Elementary School in Nazareth, Pennsylvania.

2.   Plaintiff brings this action challenging Defendant Nazareth Area School District's ("NASD") refusal to allow J.A. to distribute religious Valentine's cards at school to his classmates as part of a class-wide Valentine's Day celebration.

3.   NASD prohibited J.A. from distributing these religious Valentine's Cards to each of his classmates pursuant to its policies.

---

[1]   Pursuant to Federal Rule of Civil Procedure 5.2(a), J.A. is identified by his initials, rather than his full name.

4.     NASD, by policy and practice, permits students to distribute literature and other written materials, like Valentine's cards, in the classroom.

5.     NASD permitted students in J.A.'s class to distribute a variety of Valentine's cards bearing secular messages, including cards with human skulls, guns, and weapons, as part of the 2014 class celebration of Valentine's Day.

6.     But NASD Policy 220, entitled "Student Expression," prohibits students from engaging in any expression, whether oral or written, that "[s]eek[s] to establish the supremacy of a particular religious denomination, sect, or point of view."

7.     Pursuant to NASD's Policy 220 and its practice, NASD singled out J.A.'s religious Valentine's cards for prohibition and censure even though there was no evidence that J.A.'s cards would create a material and substantial disruption at school.

8.     Plaintiff challenges NASD's Policy 220 and practice both facially and as applied to J.A.'s religious Valentine's card.

9.     NASD's censorship of J.A.'s religious speech, and its Policy 220 and practice on which that censorship was based, violate the First and Fourteenth Amendments to the United States Constitution and the Pennsylvania Religious Freedom Protection Act.

## II.  JURISDICTION AND VENUE

10.    This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, under federal law, particularly 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. §§ 1983 & 1988, and under state law, particularly 71 P.S. § 2401, *et seq.*

11.    This Court possesses original jurisdiction over Plaintiff's claims by operation of 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear claims under the state statutes.

12.  This Court is vested with authority to issue the requested declaratory relief under 28 U.S.C. § 2201 and 2202, Federal Rule of Civil Procedure 57, and 71 P.S. § 2405(f).

13.  This Court has authority to award the requested injunctive relief under 28 U.S.C. § 1343(a)(3), Federal Rule of Civil Procedure 65, and 71 P.S. § 2405(f).

14.  This Court is authorized to award nominal damages under 28 U.S.C. § 1343(a)(4).

15.  This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988 and 71 P.S. § 2450(f).

16.  Venue is proper under 28 U.S.C. § 1391 in the Eastern District of Pennsylvania because the facts underlying this suit arose there and because Defendant is located in the Eastern District of Pennsylvania.

## III. IDENTIFICATION OF THE PLAINTIFF

17.  Donald and Ellen Abramo are J.A.'s parents and guardians, and at all times relevant to this Complaint, are and were residents of Nazareth, Pennsylvania.

18.  J.A., a minor, is a first grade student at Floyd R. Shafer Elementary School, and at all times relevant to this Complaint, a resident of Nazareth, Pennsylvania.

19.  J.A. is an adherent of the Christian faith and desires to share his religious views with his schoolmates.

20.  Pursuant to his sincerely held religious beliefs, J.A. desires to engage in religious expression and distribute religious written materials to his schoolmates, including cards celebrating Valentine's Day and other holidays, at NASD schools without facing censorship or punishment.

21.  J.A. desires to distribute religious cards and other written materials to students attending NASD schools for the same reason other students desire to distribute their materials—to

3

express well-wishes in celebration of a holiday.

22.     J.A. likewise desires to have the freedom to express his religious views at school through conversations with classmates, incorporation of relevant religious thoughts and ideas into class assignments, and via other forms of expression.

## IV.     IDENTIFICATION OF THE DEFENDANT

23.     Defendant Nazareth Area School District is organized under the laws of the State of Pennsylvania and may sue and be sued.

24.     NASD is charged, *inter alia*, with the administration, operation, and supervision of Floyd R. Shafer Elementary School, a public primary school.

25.     NASD is charged with the formulation, adoption, implementation, and enforcement of its policies, including its Policy 220 challenged herein.

26.     NASD is responsible for the enforcement of its Policy 220 by its employees.

27.     NASD is responsible for the enactment, enforcement, and existence of policies and practices related to student expression and student distribution of literature.

28.     NASD prohibited J.A. from distributing religious Valentine's cards to his friends and classmates at school during non-instructional time pursuant to its Policy 220 and practice.

29.     NASD is responsible for the implementation and application by the Superintendent, NASD officials, and local principals of its Policy 220 and practices pertaining to distribution of written materials by students.

30.     NASD has delegated to the Superintendent, NASD officials, and local principals final authority as to the approval and denial of the distribution of written materials by students, and for the denial of J.A.'s religious Valentine's cards.

V.   ALLEGATIONS OF FACT

NASD'S POLICY AND PRACTICE
REGARDING STUDENT EXPRESSION AT SCHOOL

31.   Floyd R. Shafer Elementary School ("Shafer Elementary") is a public elementary school located in Nazareth, Pennsylvania.

32.   Shafer Elementary is under the direction of NASD and includes kindergarten through third grade.

33.   NASD is the official policy maker and as such has enacted Policy 220 challenged herein.

34.   NASD Policy 220, entitled "Student Expression," specifically governs all forms of expression, including "verbal, written or symbolic representation or communication," by students.

35.   While generally recognizing the "right of students to express themselves in word or symbol and to distribute and post materials in areas designated for posting as part of that expression," Policy 220 targets specific content and viewpoints for censorship, namely religious viewpoints.

36.   Section 3 of Policy 220 states:

Unprotected Student Expression

The Board reserves the right to designate and prohibit manifestations of student expression that are not protected by the right of free expression because they violate the rights of others or where such expression is likely to or does materially and substantially interfere with school activities, school work, or discipline and order on school property or at school functions. Such expressions are those which:

      ...

2.  Seek to establish the supremacy of a particular religious denomination, sect or point of view.

37. In *Miller v. Penn Manor Sch. Dist.*, 588 F. Supp. 2d 606 (E.D. Pa. 2008), this Court struck down an identically worded Policy 220 used by the Penn Manor School District, finding that the policy "restrict[s] what effectively amounts to all religious speech, which is clearly not permissible under the First Amendment."

38. NASD Policy 220 thus prohibits a student from engaging in any form of expression, whether a conversation with a fellow classmate or a Valentine's card, that contains any religious content or viewpoints.

39. Policy 220 applies to all grade levels within NASD, up to and including the 12th grade.

NOTIFICATION TO NASD OF ITS UNCONSTITUTIONAL BAN ON RELIGIOUS SPEECH

40. On March 12, 2013, the U.S. Court of Appeals for the Third Circuit issued its opinion in *K.A. v. Pocono Mountain School District*, 710 F.3d 99 (3rd Cir. 2013), a case involving a school district's censorship of an elementary student's invitations to a religious Christmas party sponsored by her church.

41. In its opinion, the Third Circuit affirmed that "elementary school students retain certain First Amendment rights of expression." *Id*. at 111.

42. The Third Circuit further ruled that several policies relied upon by the Pocono Mountain School District to restrict K.A.'s religious expression were unconstitutional.

43. Alliance Defending Freedom, who serves as Plaintiff's counsel in this case, also represented K.A. in *Pocono Mountain School District*.

44. After the Third Circuit's decision in *Pocono Mountain School District*, Alliance Defending Freedom conducted an evaluation of the policies at every school district in the state of Pennsylvania.

45. It was discovered that many of the school districts across the state had policies identical,

or very similar, to policies struck down by the Third Circuit in *Pocono Mountain School District* and by this Court in *Miller v. Penn Manor School District*.

46.    In an effort to inform school districts that their policies did not comply with the First Amendment, Alliance Defending Freedom wrote to these school districts, identified the specific policies that had been struck down, and encouraged the school districts to take immediate steps to revise their policies.

47.    NASD was one of the school districts that Alliance Defending Freedom identified as having unconstitutional policies that restricted student expression.

48.    On December 5, 2013, Alliance Defending Freedom wrote a letter to Superintendent Riker to inform him that NASD had unconstitutional policies in place.

49.    The letter specifically cited Policy 220 and explained "[p]olicies nearly identical to the District's … have been struck down as unconstitutional for being facially content and viewpoint-based restrictions."

50.    Quoting *Miller*, the letter explained that "[p]olicies like these 'attempt[] to restrict what effectively amounts to all religious speech, which is clearly not permissible under the First Amendment.'"

51.    However, Alliance Defending Freedom received no response from Superintendent Riker or any other representative on behalf of NASD.

52.    Shortly after Alliance Defending Freedom sent out letters to NASD and the other school districts in Pennsylvania with constitutionally non-compliant policies, the Pennsylvania School Board Association (PSBA) issued a notice to its members.

53.    The notice affirmed that student expression cannot be restricted based upon its religious content or viewpoint, stating that "student-initiated religious expression is permissible

and shall not be prohibited except as to time, place and manner of distribution, or if the expression involved violates some other part of this policy, e.g., because it is independently determined to be unprotected expression."

54. The notice further corroborated Alliance Defending Freedom's findings that many school districts across the state, such as NASD, maintained unconstitutional policies and warned that "[s]ome of the schools targeted by the Alliance [Defending Freedom] do not have policies containing the PSBA amendments."

55. Despite warnings from both Alliance Defending Freedom and the Pennsylvania School Board Association, NASD took no effort to amend its unconstitutional Policy 220.

### CENSORSHIP OF J.A.'S VALENTINE'S DAY CARDS

56. In November 2013, Plaintiff J.A. and his family moved to Nazareth, Pennsylvania.

57. As with all moves during a school year, the relocation was difficult for J.A. and his siblings, who had to leave their friends, teachers, and school behind.

58. The move was particularly difficult for J.A., who is more shy than his siblings and thus takes a little longer to make new friends.

59. Nonetheless, J.A. and his siblings began to acclimate to the new school, made new friends, excelled in their studies, and exhibited consistently good behavior and citizenship while at school.

60. In January 2014, knowing that Valentine's Day was approaching, Ellen Abramo purchased four boxes of Valentine cards, one for each of her school-age children.

61. The cards included a slot with a piece of taffy candy inside.

62. In early February 2014, J.A's teacher sent home a couple of notes with each of the students regarding the upcoming "Friendship Day," the politically correct name that

NASD uses to refer to Valentine's Day.

63. One note explained that the children in J.A.'s class would be making Valentine's boxes out of empty tissue boxes for the students to collect Valentine's cards from each other.

64. A second note contained a "Valentine's List."

65. The Valentine's List gave the name of each of the students in J.A.'s class so that students could personalize the cards they gave to each of their classmates.

66. It further told parents to "Please remember not to attach anything other than non-edible treats or approved snack items to the Valentines. Thank you!"

67. After receiving the Valentine's List, J.A. and his mother began preparing the Valentine's cards for his classmates.

68. In compliance with the instructions from J.A.'s teacher, J.A. and his mother removed the candy that was attached to the Valentine's cards they had purchased.

69. This left an odd-looking slit in the Valentine's cards where the candy had been located.

70. During one of the snow days prior to Valentine's Day, J.A., Ellen Abramo, and his siblings were at home together due to NASD schools being closed.

71. With Valentine's Day just a few days away, the family began discussing the origins of the holiday.

72. Ellen explained that Valentine's Day was originally a feast day celebrated in honor of St. Valentine.

73. J.A. and his siblings looked up the history of St. Valentine and were interested to learn that he was a priest in Ancient Rome who was censored, persecuted, and eventually martyred for sharing his Christian faith.

74. J.A. and his siblings thought it would be a cool idea to share the fascinating religious

history of Valentine's Day with their classmates.

75.    Together, the family typed up a short note that they could insert in the slot in their

Valentine's Cards so that their cards would not appear empty.

76.    The note stated:

Happy Valentine's Day

St. Valentine was imprisoned and martyred for presiding over
marriages and for spreading the news of God's love. In honor of
St. Valentine's Day, I want you to know that God loves YOU!!!

"...God so loved the world that He gave His only Son, so that
everyone who believes in Him might not perish but might have
eternal life." John 3:16



*Picture of the Note*

77.    After Ellen printed out the notes, J.A. and his siblings each customized the note and the

Valentine's card that they would be taking to school to give to their classmates.

78.    J.A. personally folded each of the notes so that they would fit in the slots in the

Valentine's Cards.

79.   He then wrote the names of each of his classmates on the cards using the Valentine's List provided by his teacher and signed his name.



*Picture of J.A.'s final Valentine's Cards with insert (names redacted)*

80.   J.A. was proud of the work he had put into the cards and the accompanying notes explaining the history of St. Valentine.

81.   Due to snow, NASD schools were closed on February 14, 2014, the date scheduled for the "Friendship Day" party in J.A.'s class. The schools were also closed the following Monday, February 17, 2014 to celebrate President's Day.

82.   On Tuesday, February 18, 2014, J.A. took his Valentine's cards to school to give to his classmates as part of the card exchange.

83.   Other students brought a variety of cards bearing secular messages.

84.     Some of the cards display human skulls, guns, and other weapons:

 



85.     Many of them also included rub-on tattoos.

86.     But when J.A.'s teacher, Mrs. Carol Engelman, saw his Valentine's cards, she became
        concerned about the religious message in the card and brought them to the attention of
        Principal William S. Mudlock.

87.     Principal Mudlock reviewed the cards and determined that, because of their religious

nature, J.A. would not be allowed to distribute them.

88.   Because some of the students had not brought their Valentine's cards that day, J.A.'s cards and those of other students were collected by the teacher and placed in a bin for distribution the following day when everyone would have their cards.

89.   After J.A.'s cards were placed in the bin, Principal Mudlock directed that the religious notes be removed from J.A's cards, leaving empty the cards J.A. had worked so hard to create.

90.   That afternoon, around 3:00 p.m., Principal Mudlock called Ellen Abramo.

91.   Principal Mudlock recounted what had happened at school--that J.A.'s teacher had seen his cards and brought them to Principal Mudlock's attention.

92.   Principal Mudlock explained that J.A.'s cards could not be distributed because of their religious nature and because they contained a Bible verse.

93.   He claimed that the school was prohibited from distributing any religious materials thus barring the notes included in J.A.'s cards.

94.   Ellen responded that she understood that the school itself could not promote religion, but that the Valentine's Cards were clearly from J.A., not the school district, given that J.A. had bought the cards, created the note, placed them in the card, and personally addressed them to his classmates.

95.   Principal Mudlock reiterated that because J.A.'s Valentine's cards were religious and might be "offensive" to someone, the school would not allow them to be distributed.

96.   Ellen stated that she believed the school was violating J.A.'s rights to freedom of speech and freedom of religion.

97.   But Principal Mudlock refused to back down. He said that J.A.'s cards could not be

distributed as long as they contained a Bible verse or other religious content in them.

98.     When Ellen mentioned that her child in 3rd grade had been allowed to distribute the same cards, Principal Mudlock explained that "unfortunately" the teacher had not caught the cards before they went home with the students.

99.     After the call, and upon realizing that all of his hard work to share the true story of St. Valentine with his classmates was in vain, J.A. became upset and began crying because he would have to start all over again.

100.    That evening, Don Abramo sent an e-mail to Superintendent Riker to discuss the situation.

101.    The e-mail explained that censoring J.A.'s religious Valentine's cards "is a clear violation of his first amendment rights. The school was not condoning anything, and the school has no right to take his cards."

102.    Don Abramo asked that NASD immediately remedy the violation and allow J.A. to distribute his Valentine's cards.

103.    The following day, February 19, 2014, Superintendent Riker responded that "I have forwarded your concern to our attorney and will wait for his reply."

104.    That same day, Ellen Abramo sent a note to J.A.'s teacher asking she return the Valentine's cards to J.A. and allow him to distribute the cards to his classmates.

105.    Upon arriving at school, J.A. saw the religious inserts that he and his family had worked so hard to prepare had been removed from his Valentine's cards.

106.    Sensing that J.A. was upset by what had been done to his Valentine's cards, Mrs. Engelman called him into the hallway to discuss his Valentine's Cards.

107.    On information and belief, Mrs. Engelman explained to J.A. that the notes had to be

taken out of his Valentine's cards because they contained a Bible verse on them.

108.    J.A. was ultimately allowed to distribute his Valentine's cards, but only because NASD officials had already removed the insert containing the Bible verse and the description of the origins of Valentine's Day.

109.    The conversation with his teacher and censorship of his Valentine's cards left J.A. extremely upset and humiliated.

110.    No other students in his class had their Valentine's cards subjected to censorship by school officials.

111.    That afternoon, J.A. came home from school and explained to his parents that his religious notes had been taken out of his Valentine's cards.

112.    After learning that J.A.'s Valentine's cards had been scrubbed of all religious content by NASD, Ellen Abramo called Principal Mudlock.

113.    He was unavailable, so she left a voicemail asking why the religious notes had been removed from J.A.'s Valentine's cards and explaining that they needed to discuss the illegality of the school's actions.

114.    That same evening, Don Abramo wrote to Superintendent Riker again, reiterating that J.A.'s "civil liberties were taken away because he was not allowed to participate [in the Valentine's card distribution] yesterday and he was not being disruptive."

115.    Don Abramo again requested action "as soon as possible" to remedy the violation of J.A.'s constitutional rights.

116.    Gary Brienza, who serves as solicitor for NASD, responded to Mr. Abramo's e-mail.

117.    Mr. Brienza stated that "this matter is being looked into (factually and legally) and is being taken seriously."

118.  On February 20, 2014, two days after the censorship of J.A.'s Valentine's cards, the Abramos had still not received a final response from NASD remedying the wrong to J.A.'s First Amendment rights.

119.  That evening, Don Abramo again wrote to Mr. Brienza expressing his frustration that his son's "rights have been violated" and that the situation "is not getting resolved as quickly as it should be."

120.  Finally, on Monday, February 24, 2014, the Abramos received an e-mail from NASD requesting a meeting with Don and Ellen Abramo, Principal Mudlock, and either Superintendent Riker or Mr. Brienza.

121.  A meeting was scheduled for Friday, February 28, 2014 at 1:30 p.m. at Shafer Elementary.

122.  At the February 28th meeting, the Abramos met with Principal Mudlock and Mr. Brienza. Superintendent Riker did not attend the meeting.

123.  Principal Mudlock began by explaining that it is NASD's policy that no religious material of any kind can be distributed at school.

124.  He explained that, as a result of the policy, NASD officials had removed the religious notes from J.A.'s Valentine's cards.

125.  When the Abramos asked for a copy of the policy that prohibits religious materials, Principal Mudlock handed them a copy of NASD Policy 220.

126.  Quoting from Policy 220, Principal Mudlock claimed that the note was trying to "establish the supremacy" of J.A.'s beliefs and religion over others.

127.  The Abramos explained that their children just wanted to celebrate Valentine's Day by sharing its origins and by telling their classmates about God's love for them—an appropriate goal on a day dedicated to expressions of love and affection.

128.  Mr. Brienza proceeded to tell the Abramos that under the U.S. Constitution there is both a "freedom of religion" and a "freedom from religion."

129.  He claimed that the Constitution prohibits a person from imposing their religious beliefs on someone else; therefore, the school district can restrict a student from distributing religious materials. They especially exercised this control with younger children.

130.  The Abramos attempted to explain that the Constitution only prevents the government from imposing religious beliefs on its citizens, and does not prevent citizens from sharing their faith with one another.

131.  The Abramos explained that, as Catholics, they are compelled to share their religious beliefs with others, and that is what J.A. and his siblings were attempting to do when they included the note quoting from John 3:16—a Bible verse that describes God's love of the whole world.

132.  Mr. Brienza countered that the Constitution contains a "freedom from religion" and that it authorizes NASD to limit religious expression.

133.  Mr. Brienza stated that both Superintendent Riker and the NASD Board of Education had discussed it at their meeting on Monday, February 24, 2014.

134.  He claimed that the Superintendent and the Board of Education completely supported the decision to censor J.A.'s religious Valentine's cards.

135.  Principal Mudlock affirmed that he believed J.A.'s cards were "proselytizing" his religious faith to his classmates in violation of NASD policy.

136.   The meeting ended with Principal Mudlock and Mr. Brienza maintaining that NASD had the authority to censor J.A.'s Valentine's cards because of their religious content.

137.   In the weeks since the censorship of his Valentine's cards, J.A. continues to experience a chill upon his religious speech as a result of the actions of NASD.

138.   For example, J.A. told his parents that he does not pray over his meals at school because "he is afraid of getting in trouble."

139.   J.A. is a Bible-believing Christian who desires to share his faith and beliefs with other students through talking about his faith and distributing religious materials such as his religious Valentine's cards.

140.   J.A.'s sincerely held religious beliefs compel him to share his faith and beliefs with his friends and classmates at school.

141.   In the future, J.A. desires to engage in religious speech during non-instructional time through talking about his faith or giving religious holiday cards to his friends and classmates absent fear of reprisal and without facing punishment or being prohibited from doing so.

142.   But as long as Policy 220 remains in effect, J.A. is prohibited from engaging in any religious expression at school.

VI.   **ALLEGATIONS OF LAW**

143.   Students do not shed their constitutional rights at the schoolhouse gate.

144.   Non-disruptive, private student expression is protected by the First Amendment.

145.   Private speakers are entitled to equal, viewpoint neutral access to public fora.

146.   Religious speech is fully protected by the First Amendment.

147.   Prior restraints on speech may not delegate overly broad discretion to government

decision-makers, may not allow for content based restrictions, must further a compelling government interest, must be narrowly tailored, and must be the least restrictive means available.

148. The government may not discriminate against speech based on its viewpoint, regardless of the forum.

149. Content-based restrictions on speech in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

150. Time, place, and manner restrictions on speech must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

151. All of the acts of NASD, its officers, agents, employees, and servants were executed and are continuing to be executed by NASD under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Pennsylvania.

152. J.A. is suffering irreparable harm from the conduct of the NASD.

153. J.A. has no adequate or speedy remedy at law to correct or redress the deprivation of his rights by NASD.

154. Unless NASD Policy 220 is enjoined, J.A. will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION: VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

155. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 154 of this Complaint.

156. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits censorship of religious expression.

157.    NASD's Policy 220 acknowledges that "[t]he right of public school students to freedom of speech is guaranteed by the Constitution of the United States and the Constitution of the Commonwealth."

158.    Policy 220 "respects the right of students to express themselves in word or symbol and to distribute and post materials in areas designated for posting as part of that expression."

159.    But NASD's Policy 220 and practice prohibit J.A. from engaging in any forms of religious expression, whether verbal or written, at any school within the District by banning all expression that "[s]eek[s] to establish the supremacy of a particular religious denomination, sect or point of view."

160.    J.A.'s distribution of his religious Valentine's card would not have materially and substantially interfered with the orderly conduct of educational activity within the school.

161.    This unequal treatment of J.A.'s religious expression pursuant to Policy 220 is a content-based restriction in an otherwise open forum.

162.    NASD's Policy 220 recognizes the fundamental right of students to distribute written materials on a nearly limitless variety of topics and viewpoints.

163.    However, NASD's Policy 220 and practice discriminate against J.A.'s religious viewpoint by prohibiting him from distributing religious Valentine's cards to his friends and classmates because the cards contained a Bible verse and briefly described the historical religious origins of Valentine's Day.

164.    This denial of J.A.'s religious Valentine's cards while permitting Valentine's cards from other students constitutes viewpoint discrimination, which is unconstitutional in any type of forum.

165.    NASD Policy 220, which prohibits both verbal and written expression that "[s]eek[s] to

establish the supremacy of a particular religious denomination, sect, or point of view," is both a content-based and viewpoint-based restriction on its face due to its censorship of all religious expression.

166.   NASD's Policy 220 and practice additionally impose an unconstitutional prior restraint because they vest NASD officials with unbridled discretion to permit or refuse protected religious speech by students.

167.   NASD's Policy 220 and practice give unbridled discretion to NASD officials when deciding if written material a student desires to distribute "[s]eek[s] to establish the supremacy of a particular religious denomination, sect or point of view."

168.   Virtually all religious speech describes a particular religious viewpoint as being "supreme" to other religious viewpoints.

169.   NASD's Policy 220 and practice are additionally overbroad because they sweep within their ambit protected First Amendment expression.

170.   The overbreadth of NASD's Policy 220 and practice chill the speech of students who might seek to engage in private religious expression, including the distribution of invitations and other written materials.

171.   NASD's Policy 220 and practice chill, deter, and restrict J.A. from freely expressing his religious beliefs.

172.   NASD's Policy 220 and practice, as interpreted and applied by NASD officials to prohibit religious speech, are not the least restrictive means necessary to serve any compelling interest which NASD seeks thereby to secure.

173.   NASD's Policy 220 and practice are not reasonably related to any legitimate pedagogical concerns.

174.   Censoring students' religious speech per se is not and cannot be a legitimate pedagogical concern.

175.   NASD's Policy 220 and practice, both facially and as applied, accordingly violate J.A.'s right to Free Speech as guaranteed by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## SECOND CAUSE OF ACTION: VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

176.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 154 of this Complaint.

177.   NASD's Policy 220 and practice, by expressly targeting J.A.'s private religious expression for special disabilities because it is religious, violate his constitutional right to the free exercise of religion.

178.   J.A. desires to engage in religious speech and to distribute religious holiday cards and other written materials to his classmates at school on the basis of his sincerely held religious beliefs.

179.   NASD's Policy 220 and practice explicitly exclude – and thus discriminate against – religious expression.

180.   NASD's Policy 220 and practice substantially burden J.A.'s free exercise of religion by conditioning his ability to speak on foregoing his free exercise rights.

181.   NASD's Policy 220 and practice force J.A. to choose between engaging in religious speech and being censored, or foregoing the free exercise of religion to be able to speak without censorship or punishment.

182.   NASD's Policy 220 and practice substantially burden J.A.'s free exercise of religion by denying him the right to include private religious speech in school activities, like the Valentine's Day card exchange.

183.   NASD's Policy 220 and practice constitute the imposition of special disabilities on J.A. due to his religion and his intent to include private religious expression.

184.   NASD's Policy 220 and practice of banning J.A.'s religious Valentine's cards selectively imposes a burden on expression based on the religious nature of the expression by singling it out for discriminatory treatment.

185.   NASD's Policy 220 and practice cannot be justified by a compelling governmental interest and are not narrowly tailored to advance any such interest.

186.   NASD's interpretation and application of its Policy 220 chill J.A.'s freedom of religious expression and exercise, both of which are fundamental rights guaranteed to J.A. by the First Amendment.

187.   These special disabilities placed on J.A. are neither neutral nor of general applicability.

188.   NASD's Policy 220 is not neutral because it targets religious speech on its face and permits NASD officials to arbitrarily decide what speech is permitted under the Policy and what speech is not.

189.   NASD's Policy 220 and practice are likewise not generally applicable because they grant NASD officials unbridled discretion, enforced via a policy of individualized assessment (since NASD officials review holiday cards and Policy 220 requires students to submit written materials to NASD officials for prior review before distribution), to censor J.A.'s religious Valentine's cards while permitting other students to distribute Valentine's cards bearing secular messages.

190.   NASD's Policy 220 and practice, both facially and as applied, constitutes an excessive burden on J.A.'s rights to freedom of exercise of his religion and have violated the Free Exercise Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## THIRD CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

191.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 154 of this Complaint.

192.   The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant unbridled discretion.

193.   The arbitrary determination by NASD officials of what is and is not forbidden religious speech violates this norm.

194.   Students of common intelligence must therefore guess as to whether their religious expression will be permitted under NASD's Policy 220.

195.   NASD's Policy 220 and practice are vague and allow for unbridled discretion in determining which student speech satisfies the Policy.

196.   NASD's Policy 220 and practice allow NASD officials to act with unbridled discretion when deciding if a student's verbal or written expression "[s]eek[s] to establish the supremacy of a particular religious denomination, sect, or point of view."

197.   The discretion given to NASD officials in NASD's Policy 220 leaves censorship of student speech to the whim of NASD officials.

198.   NASD's Policy 220 and practice, both facially and as applied, accordingly violate J.A.'s rights under the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## FOURTH CAUSE OF ACTION: VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

199. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 154 of this Complaint.

200. NASD's Policy 220 and practice embody hostility toward religious expression and require excessive entanglement with religion, both forbidden under the First Amendment's Establishment Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

201. NASD's Policy 220 and practice of banning J.A.'s religious expression evinces discriminatory suppression of private speech that is not neutral, but rather is hostile toward religion.

202. NASD, pursuant to its Policy 220 and practice of suppressing private religious expression, sends the message to students that religious speakers such as J.A. are second-class citizens, outsiders, and not full members of the school community.

203. NASD sends the message that Christians like J.A. are outsiders by excluding religious points of view while concurrently permitting all other points of view.

204. NASD's Policy 220 and practice compel district officials to classify private student speech according to its perceived religious-versus-nonreligious nature.

205. Drawing this distinction necessarily requires NASD officials to inquire into the significance of words and practices to different religious faiths.

206. Such inquiries by NASD officials entangle them with religion in a manner forbidden by

the First Amendment.

207.   Entanglement problems exist because district officials must attempt to discern which
private student expression "[s]eek[s] to establish the supremacy of a particular religious
denomination, sect or point of view" or is otherwise too religious in nature to be
permitted.

208.   District officials must make theological interpretations in order to conclude that some
student speech "[s]eek[s] to establish the supremacy of a particular religious
denomination, sect or point of view" or is otherwise religious, while other student speech
is not.

209.   NASD denied J.A. the right to distribute his religious Valentine's cards because they
contained a religious point of view, an action that represents the antithesis of neutrality.

210.   No compelling state interest exists to justify the censorship of J.A.'s religious expression.

211.   NASD's Policy 220 and practice, both facially and as applied, therefore violate the
Establishment Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth
hereinafter in the Prayer for Relief.

**FIFTH CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

212.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1
through 154 of this Complaint.

213.   The Equal Protection Clause of the Fourteenth Amendment requires that the government
treat similarly situated persons and groups equally.

214.   Pursuant to its Policy 220 and practice, NASD has allowed other similarly situated
students to distribute Valentine's cards and other written materials containing secular

26

expression.

215.   NASD has treated J.A. disparately when compared to similarly situated students, by banning only J.A.'s religious expression.

216.   By discriminating against the content and viewpoint of J.A.'s speech, NASD is treating J.A.'s religious speech differently than other similar situated public school students.

217.   NASD's Policy 220 and practice violate various fundamental rights of J.A., such as rights of free speech and free exercise of religion.

218.   When government regulations, like NASD's Policy 220 and practice challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

219.   NASD's Policy 220 and practice have also been applied to intentionally discriminate against J.A.'s rights of free speech and free exercise of religion.

220.   NASD lacks a rational or compelling state interest for such disparate treatment of J.A.

221.   NASD's Policy 220 and practice are not narrowly tailored as applied to J.A. because his speech does not implicate any of the interests NASD might have.

222.   The Policy 220 and practice of NASD, as applied, thus violate J.A.'s right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## SIXTH CAUSE OF ACTION: VIOLATION OF THE RELIGIOUS FREEDOM PROTECTION ACT, 71 PA. STAT. ANN. §§ 2401-2407

223.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 154 of this Complaint.

224.   Pursuant to 71 PA. STAT. ANN. §§ 2401, *et seq.*, the government may not substantially

27

burden the free exercise of religion, even under a law of general applicability, unless it demonstrates a compelling interest and that the application of the burden is the least restrictive means of furthering that interest.

225. J.A.'s desire to engage in religious expression, including distributing religious holiday cards to his friends and classmates is motivated by his sincerely held religious beliefs in obedience to Biblical mandates.

226. J.A. sought to, and continues to seek to, engage in religious expression and distribute religious holiday cards and other written materials from a religious perspective to his friends and classmates at school.

227. Pursuant to NASD's Policy 220 and practices, NASD has excluded J.A. from engaging in religious expression and distributing religious written materials at school while permitting other students to engage in secular expression and distribute secular written materials at school.

228. NASD's prohibition of J.A.'s religious Valentine's cards, pursuant to its Policy 220 and practice, while permitting secular Valentine's cards from other students to be distributed, constitutes a substantial burden on J.A.'s Free Exercise rights.

229. Forcing J.A. to choose between following his religious beliefs by sharing his faith through written holiday cards to his classmates and being denied access, and abandoning his religious beliefs so that he may distribute secular holiday cards, creates a substantial burden on J.A.

230. NASD has no rational or compelling reason that would justify its censorship of J.A.'s religious Valentine's cards.

231. NASD does not employ the least restrictive means in applying its burden against J.A.'s

religious expression.

232.    NASD's Policy 220 and practice, both facially and as applied, therefore violate the
Religious Freedom Protection Act.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth
hereinafter in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

a.      That this Court issue a Preliminary and Permanent Injunction, restraining NASD,
its officers, agents, employees, and all other persons acting in active concert with it, from
enforcing NASD Policy 220's prohibition on any verbal or written expression which
"[s]eek[s] to establish the supremacy of a particular religious denomination, sect or point
of view" that violate J.A.'s constitutional rights by banning religious expression;

b.      That this Court render a Declaratory Judgment, declaring as unconstitutional
facially and as-applied NASD Policy 220's prohibition on any verbal or written
expression which "[s]eek[s] to establish the supremacy of a particular religious
denomination, sect or point of view" that ban religious expression in violation of the First
and Fourteenth Amendments to the United States Constitution;

c.      That this Court adjudge, decree, and declare the rights and other legal relations of
the parties to the subject matter here in controversy, in order that such declarations shall
have the force and effect of final judgment;

d.      That this Court retain jurisdiction of this matter for the purpose of enforcing any
Orders;

e.      That the Court award J.A.'s costs and expenses of this action, including a

reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988 and 71 P.S. § 2450(f).

f.      That this Court award nominal damages for the violation of J.A.'s constitutional rights;

g.      That this Court issue the requested injunctive relief without a condition of bond or other security being required of J.A.; and

h.      That the Court grant such other and further relief as the Court deems equitable and just in the circumstances.

Dated this 3rd day of April, 2014.

s/ L. Theodore Hoppe, Jr.
L. Theodore Hoppe, Jr.
PA Bar # 62082
2 S. Orange Street, Suite 215
Santander Bank Building
Media, PA 19063
Telephone: (610) 497-3579
Facsimile: (610) 365-1333
E-mail: thoppe@thoppelaw.com

s/ J. Matthew Sharp
J. Matthew Sharp*
GA Bar # 607842
Alliance Defending Freedom
1000 Hurricane Shoals Road, NE
Building D, Suite 1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile: (770) 339-6744
E-mail: msharp@alliancedefendingfreedom.org

Jeremy D. Tedesco*
AZ Bar # 023497
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
E-mail: jtedesco@ alliancedefendingfreedom.org
*Application for Admission Pro Hac Vice Pending

Attorneys for Plaintiff

**VERIFICATION**

I, Don Abramo, a citizen of the United States and a resident of the State of Pennsylvania have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _1st_ day of _April_, 20_14_.

_____
Don Abramo

**VERIFICATION**

I, Ellen Abramo, a citizen of the United States and a resident of the State of Pennsylvania, have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this ____1st____ day of ____April____, 20_14_.

Ellen Abramo
Ellen Abramo